UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA A. YOUNG,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>Defendant. | NO. 2:15-CV-00120-JLQ<br><br>MEMORANDUM OPINION AND ORDER RE: MOTION FOR JUDGMENT ON RECORD |

BEFORE THE COURT is Plaintiff Rebecca Young's Motion for Judgment on the Record (ECF No. 26). Response and Reply briefs have been filed. Plaintiff is represented by George Fields. Defendant is represented by Gabriel Baker and D. Michael Reilly. Neither party requested oral argument and the matter was submitted on the briefs.

**I. Introduction and Procedural History**

Plaintiff filed her Complaint on May 1, 2015, alleging she was wrongfully denied disability benefits by Defendant. Plaintiff claims that under the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1132, she is entitled to long-term disability benefits. Defendant filed an Answer admitting Plaintiff made a claim for long-term disability benefits and Defendant determined she was not eligible. Defendant admits that as part of its evaluation of Plaintiff's claim surveillance of the Plaintiff was conducted and a video recording and surveillance report were created. (ECF No. 11 , ¶ 26-30). Defendant maintains the determination Plaintiff was not eligible was correct under the terms of Policy # GLTD-AASY (the "Policy") which was issued to Plaintiff's employer, Spokane Teachers' Credit Union ("STCU") by Defendant.

ORDER - 1

The Administrative Record has been filed under seal.  The parties have stipulated the appropriate standard of review is de novo. (ECF No. 25).  The parties have further agreed the Administrative Record is complete, and there is no need for additional discovery. (*Id*.).

## II. Discussion

### A. The Parties' Arguments

Plaintiff contends her primary treating physicians, as well as the Defendant's evaluating physician, support her claim for benefits.  Plaintiff contends Defendant wrongfully relied on insufficiently probative video surveillance evidence in denying Plaintiff's claim. Plaintiff contends she was "disabled under the 'regular occupation' standard" set forth in the Policy. (ECF No. 26, p. 3). Defendant responds Plaintiff cannot meet her burden of proof, and must prove a significant change in mental or physical functional capacity has occurred which prevents her from performing at least one of the material duties of her regular occupation. (ECF No. 31, p. 1-2). Defendant argues Plaintiff remained able to work despite her symptoms, and her symptoms were improving.  Defendant contends the Administrative Record (hereafter "Record") lacks objective evidence of disability--specifically Defendant argues Ms. Young has not sought the treatments or engaged in the behaviors typical of people suffering from severe headaches and neck pain. (*Id*. at p. 11). Defendant states the "sole basis" for Plaintiff's disability claim is her self-reported symptoms and Plaintiff lacks credibility. (*Id*. at 13). Additionally, Defendant claims Plaintiff's arguments concerning claims handling are irrelevant under a de novo standard of review.

### B. Standard of Review

The parties have stipulated the appropriate standard of review is de novo.  Under a de novo standard of review, "the court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health*, 458 F.3d 955, 963 (9th Cir. 2006).  When the court is reviewing under a de novo standard of review, the burden of proof is on the claimant to show she was entitled to benefits under

1 the plan. *Muniz v. Amec Const. Management*, 623 F.3d 1290, 1294 (9th Cir. 2010).  The
2 parties agree the burden of proof is on the Plaintiff and she must meet that burden by a
3 preponderance of the evidence.

### C. The Medical Evidence

Plaintiff ceased working as a Database Systems Engineer at Spokane Teacher's Credit Union ("STCU") on January 1, 2014.  Plaintiff claims as of that date she was disabled from working at her regular occupation as a Database Systems Engineer due primarily to frequent headaches and neck and shoulder pain, which may have been attributable to cervical spine degeneration.  Plaintiff had problems with headaches for at least several months prior to leaving STCU.  At a May 17, 2013 visit with her treating physician, Dr. Jeffrey O'Connor, MD, she reported the headaches had been "going on for over a year". (Record at 435).  She reported to Dr. O'Connor she had tried icing her neck and head, physical therapy, and massage therapy to alleviate the pain from the headaches.  In July 2013, Dr. O'Connor assessed it was more probable than not Ms. Young's headaches were caused by her job. (Record at 431).  The treatment plan stated changing jobs would likely be the only way to eliminate the headaches. (*Id.*). Ms. Young also had an MRI of her spine in May 2013.  The MRI showed multiple incidences of disc "bulge" and "protrusion", as well as some "moderate" canal stenosis. (Record at 514).

In August 2014, Dr. O'Connor responded to a residual functional capacity ("RFC") questionnaire presented by Plaintiff's counsel. (Record at 821-823).  He stated her diagnosis as "chronic headaches and neck pain and back pain, musculoskeletal in origin." (*Id.*).  He stated a "trigger" for the headaches is "sitting at a computer for almost any length of time." (*Id.*).  He stated Plaintiff is not a "malingerer", and he anticipated her impairments will last for at least the next twelve months.  He further opined that when Plaintiff is having a headache she is not able to perform any of her basic work activities. (*Id.* at 822).

Ms. Young attended appointments with an occupational physical therapist in

ORDER - 3

January 2015. The therapist described Ms. Young as being "very active in her care" and compliant with prescribed exercises. (Record at 544).

During the administrative appeal, Defendant sent Plaintiff for a medical exam by its retained neurologist, Dr. Zoltani, on February 14, 2015. (Record at 353). Dr. Zoltani reviewed the records of Dr. O'Connor, and also of a treating chiropractor, Dr. Wickstrom. Ms. Young reported to Dr. Zoltani that some physical activity exacerbated her symptoms, including looking down at her computer. (*Id*. at 355). She reported she had been receiving chiropractic care since February 2014, and had noticed improvement in her symptoms. She reported to Dr. Zoltani she was able to drive herself, and for exercise she liked to walk and do "gentle yoga stretches". (*Id*. at 357).

Dr. Zoltani also reviewed the MRI from May 2013, and found it showed "multilevel degenerative type changes, most significant at C5-6 with some cervical cord impingement." (*Id*. at 358). He diagnosed Ms. Young with: 1) chronic cervical myofascial pain; 2) cervical degenerative disc disease; and 3) chronic cervicogenic headaches with components of occipital neuralgia. (*Id*. at 359). He found Ms. Young to have significant limitations and that her diagnosis "would preclude the following occupational demands on a full time basis: Frequent sitting, occasional standing and walking, exertion up to 10 pounds of force..." (*Id*.). He found that Ms. Young should have "no frequent sitting" and should not have flexion of the neck "such as would occur with looking down or looking up for more than 15 minutes in an hour." (*Id*. at 360). Lastly, Dr. Zoltani found "no inconsistencies" in her clinical presentation. (*Id*.)

Dr. Zoltani's initial report supported Ms. Young's claim of disability. Defendant then sent Dr. Zoltani a video surveillance tape, containing some covert surveillance footage of Plaintiff obtained by the Defendant, and asked Dr. Zoltani to address several additional questions. These additional questions could generously be called leading, but were perhaps more accurately reflective of bias and intended to reach a desired conclusion. For example, Question No. 3 (Record at 311-312) states Plaintiff's complaints of pain while looking down at a computer "is inconsistent with her head

ORDER - 4

positions while walking the dog", and asks isn't it "inconsistent" with her complaints of neck pain to walk a medium sized dog, and concludes "please comment on these apparent inconsistencies". Dr. Zoltani's answer is, *en toto*, "this is inconsistent with her history". (*Id*. at 312).

The Defendant asked Dr. Zoltani an additional question which included "it is my impression that the insured does not have evidence of a physically based medical condition ... Do you agree?". Again, Dr. Zoltani concurs with the Defendant's "impression". (*Id*. at 312).

The video surveillance footage was of marginal, if any, relevance. It showed Plaintiff walking (sometimes with a dog), driving, and opening a chain link fence gate. It did not show her sitting for hours while working on a computer. It also did not show her engaging in activities which contradicted her self-reports to her attending physician and the Defendant's retained medical examiner. The original IME of Dr. Zoltani states: "She is able to perform her activities of daily living, including driving, cooking, laundry, and grocery shopping." (*Id*. at 354). Additionally, Ms. Young reported "she is able to drive and estimates that she can comfortably do this about 30 minutes, but usually 15 minutes." (*Id*. at 356). She also told Dr. Zoltani she walked "six days a week" for exercise. (*Id*. at 357). Ms. Young's reported activities of daily living did not interfere with Dr. Zoltani's initial finding that Ms. Young could not engage in "frequent sitting" and should not have flexion of the neck "such as would occur with looking down or looking up for more than 15 minutes in an hour." (*Id*. at 360).

### D. Other Materials

Plaintiff submitted letters from her mother and two neighbors concerning her condition. (Record at 906-08). Plaintiff's mother states Ms. Young has been having painful headaches for over two years, and she has seen her use ice for her head and neck. She states her daughter has had to hire people to help out around the house, and she has been unable to do some of the recreational activities she enjoys. The letters from her neighbors state they have observed Ms. Young having painful headaches, Ms. Young has

ORDER - 5

had to restrict her activities, and they have helped her with things such as yardwork.

Documents from Plaintiff's personnel file were submitted, including recent performance reviews. The physical requirements of her job included sitting or standing for long periods of time, and the ability to operate a computer. (Record at 911). Ms. Young's August 2012 performance review states in part: "Rebecca has had another fantastic year, and has become a strong partner to teammates and other departments." (*Id.* at 916). Generally Ms. Young's reviews appear quite positive, she received a promotion from Database Administrator to Database Systems Engineer, and received several salary increases over the years with STCU.

The aforementioned surveillance video and surveillance report (Record 365-382) were submitted to and considered by the court. Plaintiff also asked the court to take judicial notice of two items: 1) Defendant's financial information in the form of an SEC filing, and 2) weather reports from the Spokane area for the days on which Ms. Young was under surveillance. (ECF No. 26-1 and 26-2). The court declines to do so for several reasons. First, this matter is a review of the administrative record and those documents were not part of the Record. Second, the parties stipulated the Record was complete and no additional discovery was needed. Third, the documents are not relevant to the court's determination. As to the financial information, Defendant's financial strength does not impact whether Ms. Young is disabled. As to the weather conditions, Plaintiff contends the records were submitted "to rebut [Defendant's] suggestion that the days were sunny and Young therefore would need to wear sunglasses to avoid headaches." (ECF No. 26, p. 7). The video images speak for themselves. A general weather report for a metropolitan area does not establish whether it was sunny, cloudy, or partly cloudy at a specific location at a specific time. Of greater import, Plaintiff's treating physician, Dr. O'Connor stated: "Though [Ms. Young] has had significant sleep loss and ongoing pain at times she doesn't seem to have a lot of nausea, vomiting, photosensitivity, or visual disturbances." (Record at 821). As the medical record shows Plaintiff did not suffer from photosensitivity, whether it was sunny or not is of marginal, if any, relevance.

ORDER - 6

### E. The Policy Provisions

In denying benefits, Defendant relied on the following provisions from the Policy (Record 295-96):

**Disability and Disabled** means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which:

a) during the Elimination Period, You are prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and

b) after the Elimination Period, You are:

1. prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and

2. unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness.

After a Monthly Benefit has been paid for 2 years, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation.

Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with the Policyholder.

**Material Duties** means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than the required Full-Time hours per week in itself to be part of material duties. One of the materials duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.

**Regular Occupation** means the occupation You are routinely performing when Your Disability begins.

### F. Analysis and Conclusions

The denial letter stated a finding Ms. Young was not precluded from performing the Material Duties of her Regular Occupation. The letter stated in part: "We acknowledge Ms. Young was assessed with headaches and cervical pain. While we appreciate **Dr. O'Connor's opinion that she is precluded from performing her job**, the restrictions and limitations of no work are not corroborated by the documentation in file including her demonstrated activities as noted above." (Record at p. 298-99)(emphasis added). The denial letter goes on to state the "medical records in file do not

ORDER - 7

substantiate any functional deficits that would preclude Ms. Young from working and there is no evidence to support she is limited due to her headaches and cervical pain." (*Id*. at 299). The denial letter concludes its analysis: "In summary, the file lacks confirmation of physical examinations, diagnostic testing, and/or medical documentation to substantiate Ms. Young would be unable to perform the material duties of her regular occupation. Therefore disability is not supported." (*Id*.).

The court finds Defendant's conclusion there is no medical documentation to substantiate Ms. Young's claim is directly contrary to the findings by Dr. O'Connor and by Dr. Zoltani in his initial IME evaluation. Dr. O'Connor's response to the residual functional capacity ("RFC") questionnaire supported a finding of disability. (Record at 821-823). Dr. Zoltani diagnosed Ms. Young with: 1) chronic cervical myofascial pain; 2) cervical degenerative disc disease; and 3) chronic cervicogenic headaches with components of occipital neuralgia. (*Id*. at 359). Dr. Zoltani reviewed objective medical evidence, the MRI from May 2013, and found it showed "multilevel degenerative type changes, most significant at C5-6 with some cervical cord impingement." (*Id*. at 358).

Dr. Zoltani's initial opinion supported Plaintiff's claim, and he only amended it in response to Defendant's additional questions which solicited agreement and took an advocacy position against Ms. Young. Defendant also provided Dr. Zoltani with surveillance footage, and it appears Defendant relied heavily in its finding of non-disability on that fact that while under surveillance for a 4-day period, Plaintiff twice walked her dog for approximately 30 minutes. This strikes the court as entirely unreasonable. Whether Ms. Young can walk a dog says virtually nothing about her ability to perform her regular occupation as a Database Systems Engineer.

Plaintiff was under surveillance for four days. On February 13, 2015, she was only observed to be active for about two hours--she appears to have gone to a one-hour healthcare appointment at Synergy Healthcare and stopped to get a take out lunch on way home. (Record at 367-68). On February 14, 2015, she was observed going to her IME appointment and observed driving later in the afternoon. On February 15, 2015, no

ORDER - 8

claimant activity was observed until approximately 11:30 a.m. when Ms. Young left to go to church. Later that afternoon, after returning from work, she walked a dog for about a half hour. On February 16, 2015, no claimant activity was observed until after noon. At approximately 12:30 p.m., Ms. Young walked her dog for approximately a half hour. Later that afternoon she was observed driving.

Plaintiff was followed for four days. She was observed twice going to healthcare appointments and once going to church. She often did not leave the house until around 11:00 a.m. As stated *supra* in Section C, what was observed was not inconsistent with Plaintiff's self-reports. Plaintiff's ability to walk for 30-minutes with her dog does not contradict her claim of inability to work full-time as a Database Systems Engineer.

What occurred here is similar to the situation described by the Ninth Circuit Court of Appeals in *Montour v. Hartford Life Insurance Co.*, 588 F.3d 623 (9th Cir. 2009). Montour made a claim for long term disability benefits under an ERISA plan. Hartford hired a contractor to conduct surveillance of Montour for four days. The District Court found that Hartford "overstates and over-relies on surveillance" and that the activities observed were "brief and consistent with Plaintiff's self-reported limitations." *Id*. at 633. The District Court stated: "that Plaintiff could perform sedentary activities in bursts spread out over four days does not indicate that he is capable of sustaining activity in a full-time occupation." *Id*. The Ninth Circuit cited with approval the District Court's analysis and found the insurer's conduct evidenced bias and the insurer's case manager had taken an "advocacy position" with Montour's physicians and solicited the doctors agreement with the insurer's disability conclusion. *Id*. at 634.

The surveillance video of Ms. Young does not depict activity inconsistent with her reported limitations. The video does not demonstrate Ms. Young has the ability to work full-time in her regular occupation. The questions posed by Defendant to Dr. Zoltani, and responded to in the addendum to the IME report, show Defendant taking an advocacy position towards a conclusion of non-disability, and the responses unfortunately show the 'independent' medical examiner acquiescing to Defendant's advocacy. In *Chellino v.*

ORDER - 9

*Kaiser Foundation Health*, 352 Fed.Appx. 164 (9th Cir. 2009), Dr. Krames issued an opinion finding the claimant was 100% disabled and then was asked to view surveillance video by the insurer. He then issued a supplemental report finding claimant not disabled. The Ninth Circuit reversed the denial of benefits and found the activities shown on the surveillance footage were consistent with claimant's subjective complaints and self-reported limitations. *Id*. at *2; see also *Thivierge v. Hartford Life*, 2006 WL 823751 (N.D. Cal. 2006)("The doctors noted that Plaintiff was observed on the video surveillance walking, driving, and doing errands; however, doing those activities for a couple of hours on five out of six days she was under surveillance does not mean that Plaintiff is able to work an eight-hour a day job."); *Beaty v. Prudential Ins.Co.*, 313 Fed.Appx. 46 (9th Cir. 2009)(district court drew "unsupportable inferences from a surveillance video and reports which show the plaintiff engaging in a variety of normal day-to-day activities" and failed to explain how those activities "demonstrate she can perform the duties of her occupation as a vice president of underwriting").

Similar errors were made by Defendant herein. When virtually all of the medical evidence supported Plaintiff's claim, including the initial report from Defendant's retained expert, Dr. Zoltani, Defendant overly relied on surveillance video that was of marginal, if any, relevance to the disability determination and used it to sway the position of Dr. Zoltani through a series of questions which solicited his agreement with Defendant's conclusions.

### III. Conclusion

Plaintiff has established she was disabled under the Policy and unable to perform the material duties of her regular occupation. Plaintiff's Motion For Judgment On The Record is Granted.

The court turns now to the issue of the relief requested. Plaintiff's Motion seeks an award of "past-due and continuing benefits" in the amount of $4,167.43/month plus a $300/month benefit for health care. Plaintiff further seeks an award of prejudgment interest. It appears Plaintiff contends benefits should have begun on April 1, 2014, after

the 90-day elimination period under the Policy. On the issue of damages, Defendant has stipulated in its response brief the court may award pre-judgment interest. (ECF No. 31, p.17 n.2). Defendant argues Plaintiff cannot be awarded "continuing benefits" because she has argued she is disabled from returning to her "regular occupation" and thus the maximum award of benefits is two-years. If benefits commenced on April 1, 2014, the two year period would expire in the near future, on April 1, 2016. Plaintiff has stated "she is not alleging total disability from all substantial gainful activity in the national economy" and has not applied for Social Security benefits. (ECF No. 32, p. 9).

Plaintiff has established she is disabled from performing the material duties of her regular occupation within the meaning of the Policy. The parties briefing did not focus extensively on the issue of damages. Plaintiff's brief sets forth the monthly benefit, and that information is in the Record. Additionally, mention is made of COBRA benefits for 18-months being included in the damage award. However, Plaintiff's Declaration (ECF No. 27) appears to contend she paid healthcare premiums under COBRA for 8-months. The parties' positions are also unclear as to the benefit start date. It appears Plaintiff contends it is April 2014. Defendant contends in briefing it is "irrelevant" that Defendant misstated Plaintiff's last date of work in its denial letter. There are also references in the Record to a benefit start date of June 2014.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Judgment On The Record (ECF No. 26) is **GRANTED**.

2. The parties shall promptly confer in an effort to furnish the court with a stipulation as to damages to be awarded. Such a stipulation shall be filed on or before **March 30, 2016.**

3. If agreement on damages is not reached, the parties shall submit supplemental briefs on the issue of damages, containing specific calculations as to prejudgment interest, benefit commencement date, COBRA benefits, etc. as outlined above. The briefs on damages shall not exceed 7 pages. Plaintiff shall also submit a proposed judgment containing the damages calculation. Defendant may, but is not required to,

submit a proposed judgment.  The briefs and proposed judgments shall be filed **no later than April 15, 2016**.

**IT IS SO ORDERED**.  The Clerk shall file this Order and furnish copies to counsel.

**DATED** this 25th  day of February, 2016.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 12